**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| NE'TOSHA BURDETTE, individually and on behalf of a class of similarly situated individuals, | ) | |
| *Plaintiff,* | ) | No. 1:23-cv-10351 |
| v. | ) | Hon. Judge Harry Leinenweber |
| FUBOTV INC., a New York corporation. | ) | |
| *Defendant.* | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT FUBOTV INC'S MOTION TO DISMISS**

Dated December 18, 2023

Eugene Y. Turin
Jordan R. Frysinger
McGuire Law, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

# TABLE OF CONTENTS

**Table of Authorities** .......... ii

**I. INTRODUCTION** .......... 1

**II. BACKGROUND** .......... 2

**A. Defendant's Collection and Disclosure of its Subscribers' PII** .......... 2

**B. Facts Specific to Plaintiff** .......... 5

**III. LEGAL STANDARD** .......... 5

**IV. ARGUMENT** .......... 6

**A. Plaintiff Alleges Numerous Facts Showing That Defendant Disclosed Her PII to Third-Parties** .......... 6

**B. Defendant is a "Video Tape Service Provider."** .......... 12

**C. The "Ordinary-Course" Exception under the VPPA does not Apply** .......... 14

**V. CONCLUSION** .......... 15

## TABLE OF AUTHORITIES

**Case** **Page(s)**

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Circuit 2017)....6

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015)....6

*Feldman v. Star Tribune Media Company LLC,*
No. 22-cv-1737, 2023 WL 2388381 (D. Minn. Mar. 7 2023)....8

*Golen v. NBCUniversal Media, LLC,*
No. 22-cv-9859, 2023 WL 5434378 (S.D. NY Aug. 23, 2023)....13

*Goplin v. WeConnect, Inc.,*
893 F.3d 488 (7th Cir. 2018)....7

*Harris v. Public Broadcasting Service*,
No. 22-cv-2456, 2023 WL 2583118 (N.D. GA Mar. 20, 2023)....6, 12

*Hepp v. Ultra Green Energy Servs., LLC*,
No. 13-cv-4692, 2016 WL 1073070 (N.D. Ill. Mar. 18, 2016)....7

*In re Hulu Priv. Litig.*,
No. 11-cv-03764, 2012, WL 3282960 (N.D. Cal. Aug. 10, 2012)....14

*In re Hulu Priv. Litig.*,
No. 11-cv-03764, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)....8

*In re Vizio, Inc., Consumer Privacy Litigation*,
283 F. Supp. 3d 1204 (C.D. Cal. 2017)....10, 12

*Jackson v. Fandom, Inc.*,
No. 22-cv-04423, 2023 WL 4670285 (N.D. Cal. Jul. 20, 2023)....8, 14

*Lebakken v. WebMD LLC*,
640 F.Supp.3d 1335 (N.D. Ga. 2022)....8

*Louth v. NFL Enterprises LLC*,
No. 21-cv-00405, 2022 WL 130866 (D. R. I. Sept. 12, 2022)....9, 10

*Morr-Fitz, Inc. v. Blagojevich*,
231 Ill. 2d 474 (2008)....15

*Yershov v. Gannett Satellite Information Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ........ 6, 9, 12

**Statutes**

18 U.S.C. § 2710 *et seq* ........ 1, 13, 14

## I. INTRODUCTION

The Video Privacy Protection Act (the "VPPA"), 18 U.S.C. § 2710 *et seq.* was passed by Congress to protect consumers' privacy about the video materials that they rent or buy to watch. Although the VPPA was passed in 1988, with the rise of online and mobile device video streaming services such as Netflix and Amazon Prime Video, it is more relevant than ever as it serves to protect consumers from having their video watch history disclosed to advertisers and monetized, or, worse yet, utilized by nefarious groups or organizations that could pay such streaming services to identify vulnerable populations.

Defendant FuboTV, Inc. ("Defendant" or "Fubo") is one of the largest video streaming services in the country, with 1.4 million subscribers. Fubo, like many other streaming services, requires users to subscribe to FuboTV by creating an account and providing payment information that is automatically charged after the first 7-day period. Critically, Defendant, like other streaming services, shows advertisements for various third-party companies that are targeted to the most relevant viewing audience based on their demographics and past viewing history. As such, and as Plaintiff plainly alleges, Fubo necessarily collects and discloses its subscribers' identities and viewing history in order to gather billions of data points and target advertisements for various paying third-parties to specific individuals who will view them. Plaintiff Ne'Tosha Burdette ("Plaintiff") was one such subscriber who created an account and subscribed to Fubo's streaming service in order to view its video materials. As a result of Plaintiff viewing Fubo's video materials Fubo disclosed her personally identifiable information, including her viewing history, to third parties without her written consent. As such, Defendant has violated Plaintiff's and other class members' privacy rights under the VPPA and Defendant's argument that Plaintiff has failed to plausibly allege violations of the VPPA lacks merit. For these reasons, and those stated in further detail below, Defendant's Motion to Dismiss should be denied.

## II. BACKGROUND

Defendant Fubo is the operator of one of the most popular video streaming services in the nation with 1.4 million subscribers as of 2022. (Complaint ("Complaint"), Dkt. 1, at ¶ 18.) In order to gain access to Defendant's streaming services, consumers are required to subscribe to FuboTV by creating an account and paying a subscription fee (hereinafter "Subscribers"). (*Id*. a ¶ 19.) Importantly, while creating their account, Subscribers are not specifically asked to consent to Defendant sharing and disclosing their Personally Identifiable Information ("PII") – information which identifies a Subscriber as having viewed a specific video content – to third parties. (*Id.* at ¶ 20.) However, despite not obtaining informed, written consent from its Subscribers, Defendant nonetheless discloses its Subscribers' PII to various third parties. (*Id*. at ¶ 21.)

### A. Defendant's Collection and Disclosure of its Subscriber's PII.

While Defendant attempts to dispute that it collected and disclosed its Subscribers' PII, Plaintiff's Complaint plausibly alleges numerous facts establishing that it does so based on extrinsic evidence and disclosures made by Defendant itself. To begin with, in its privacy policy Defendant readily admits that it "may" collect a slew of information from its Subscribers including but not limited to: 1) Account registration information; 2) Transactional or commercial information; 3) Location information including precise geolocation; 4) Device information and related identifiers; 5) Usage information which details how its Subscribers use its services; and 5) Online analytics and advertising information collected through web analytics and tracking technologies. (*Id.* at ¶ 22.) Specific information collected amongst these categories include Subscribers' name, account activity information such as programs searched for, recorded and watched, precise geolocation including GPS coordinates to determine a Subscribers' location, IP addresses, browser characteristics and device IDs, advertising identifiers, and usage information

including pages and content viewed. Importantly, Defendant admits it combines the information it "may" collect with information collected automatically or received from other sources and uses such information according to its privacy policy. (Complaint at ¶ 23.) Furthermore, Defendant states that it uses *third-party* web analytics to collect and analyze its Subscribers' use of its services. (*Id*. at ¶ 22.) In addition, Defendant allows third-parties to place tracking technologies, including Google Analytics and the Meta Pixel, on Subscribers' computers, mobile devices, or other devices "to collect information about [Subscribers] to assist in the delivery of relevant advertising. . ." (*Id.*) Thus, the compilation of data that Defendant itself admits its collects identifies specific Subscribers and their exact location, Subscribers' use of its services, and the specific video content that they viewed. (*Id.* at ¶¶ 22–24.)

Defendant also admits in its Privacy Policy that it discloses the above-mentioned collected PII to advertisers, advertising networks, sponsorship partners, customer referral marketing partners affiliates, subsidiaries, and to other third-parties. (*Id.* at ¶¶ 24, 25.) Defendant states that its disclosures are for various purposes including for "marketing and advertising on its Services" and for other similar uses. (*Id*.) Furthermore, Defendant states that it "disclose[s] information about content [Subscribers'] view on FuboTV Services to video measurement services . . . as well as other analytics providers." (*Id.* at ¶ 24.) Additionally, through cookies, tracking pixels, and other tracking technologies (which Defendant collectively refers to as "Cookies") placed on FuboTV's services by both Defendant and third-parties, Defendant analyzes and discloses, or allows third-parties to collect, how Subscribers use its website and tracks user behavior so its advertisers can provide relevant advertisements based on its Subscribers' activity. (*Id.* at ¶ 22.) While Defendant's Privacy Policy occasionally states that it *may* share portions of the aforementioned collected PII

from its Subscribers with third-parties, Defendant's disclosures, annual reports, and advertiser pitch-decks make clear that Defendant does in fact do so. (Complaint at ¶¶ 26, 27.)

For example, Defendant encourages its advertising partners to "follow the audience" across its offered content portfolio where it uses first-party data to "create custom audience segments informed by viewership behavior to target users based on the exact content and amount of time they are watching, anywhere on the platform." (*Id.* at ¶ 26.) As a result, advertisers "can reach these **specific** [Subscriber]s across any content genre available on FuboTV." (*Id*) (emphasis added). To that end, Defendant has even admitted its own fault regarding the sharing of its Subscribers' viewing information. Defendant stated in its 2022, 2021, and 2020 Annual Reports that:

> "our use of subscriber data to deliver relevant advertising on our platform places us and our content publishers at risk for claims under a number of laws, including but not limited to the Video Privacy Protection Act ("VPPA"). Some content publishers have been engaged in litigation over alleged violations of the VPPA relating to activities on online platforms in connection with advertising provided by unrelated third parties. . . We and our content publishers and advertisers could be at risk for violation or alleged violation of these and other laws, regulations, and other standards and contractual obligations relating to privacy, data protection, and information security."

(*Id*. at ¶ 27.)

In short, Defendant obtains a slew of data from its Subscribers, including PII which can be used to identify a specific person, their identifying information, their exact location information, and the content and videos that they viewed, and shares it with a variety of third parties for various purposes including to generate advertising revenue. By disclosing its Subscribers' PII – which reveals both their identity and the video materials they have requested from Defendant – without their consent, Defendant has intentionally and knowingly violated the VPPA.

### B. Facts Specific to Plaintiff.

Plaintiff subscribed to Defendant's FuboTV streaming service within the past two years and used her account with Defendant to view prerecorded video materials through her subscription on a weekly basis since signing up. (Complaint at ¶¶ 32, 33.) While viewing content on FuboTV Plaintiff regularly saw various advertisements which were based on the content that she was viewing or had viewed in the past. (*Id.* at ¶¶ 35, 36.) Plaintiff never specifically and separately consented, agreed, authorized, or otherwise permitted Defendant to collect her PII and disclose her PII to third-parties. (*Id.* at ¶ 37.) However, despite not providing her consent, Defendant knowingly and intentionally disclosed Plaintiff's PII, including specifically her viewing history, to third parties and affiliates. (*Id.* at ¶ 34.) By disclosing Plaintiff's PII, which reveals both her identity *and* the video materials she viewed, to third-parties, Defendant has violated the VPPA and Plaintiff's privacy rights. (*Id.* at ¶ 39.)

## III. LEGAL STANDARD

Defendant challenges Plaintiff's VPPA claims pursuant to Fed. R. Civ. P. 12(b)(6). (Motion to Dismiss ("MTD"), Dkt. 12, at 4.) A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts or even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 US. 544, 556 (2007). When considering a Rule 12(b)(6) motion, the court must construe the complaint "in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the plaintiff's] favor." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis.*, 657 F.3d 496, 502 (7th Cir. 2011); *see also Sanjuan v. American Bd. Of*

*Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Under notice pleading, the plaintiff need only give the defendant a fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## IV. ARGUMENT

### A. Plaintiff Alleges Numerous Facts Showing That Defendant Disclosed Her PII to Third-Parties.

Defendant argues that Plaintiff fails to sufficiently allege that it disclosed her Personally Identifiable Information that would allow a third-party to connect her viewing history to her. (MTD at 5, 6, 10, 11, 13.) In so arguing, Defendant asks the Court to ignore the numerous *factual* allegations based on Defendant's own disclosures regarding the information that it collects and discloses to third-parties simply because Defendant's disclosure state that it *may* engage in such conduct. However, Plaintiff's Complaint plainly explains why Defendant's disclosures are not merely hypothetical, but exactly how Defendant discloses its Subscribers, including Plaintiff's, PII.

The VPPA generally prohibits "video tape service providers" from knowingly disclosing, to a third-party, "personally identifiable information concerning any consumer." *Harris v. Public Broadcasting Service*, No. 22-cv-2456, 2023 WL 2583118 at *2 (N.D. Ga. Mar. 20, 2023) (quoting *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1253 (11th Cir. 2015)). PII is "information reasonably and foreseeably likely to reveal which . . . videos [a plaintiff] has obtained." *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). PII is an inclusive term encompassing "[m]any types of information other than a name [that] can easily identify a person." *Yershov*, 820 F.3d at 486; *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Circuit 2017) ("when a football referee announces a violation by 'No. 12 on the offense,' everyone with a game program knows the name of the player who was flagged[]"). Plaintiff's Complaint

plainly alleges numerous facts that demonstrate that Defendant disclosed *her* PII in violation of the VPPA.

First, Plaintiff alleges that Defendant collects and discloses to third-parties which videos she viewed while using her FuboTV Subscription. (Complaint at ¶¶ 21–26, 34, 55.) Specifically, Defendant's Privacy Policy affirmatively states that it collects, discloses, and allows its third-party service providers to "collect and analyze information about [Subscribers'] usage activity such as . . . files *you* download . . . pages and *content viewed* . . . the data and time *you* used the Services[.]" (*Id.* at ¶ 22F) (emphasis added). While Defendant dismisses these allegations as not proving that the data collected could be used to identify her (MTD at 9), Defendant blatantly disregards the numerous references to how it is *her* data that is being collected and disclosed. In addition to directly collecting and disclosing information that reveals Plaintiff has viewed specific video content, Defendant has also installed, and allows third-parties to install, tracking pixels and other tracking technologies on Subscribers' computers, mobile devices, or other devices to collect and analyze their usage information and to deliver Subscriber specific advertisements. (*Id.* at ¶ 22H.) While Defendant dismisses these allegations because it's privacy policy states that it "*may* use third-party web analytic services" (MTD at 9–10), Section 4 of Defendant's privacy policy *affirmatively* states that "we and our service providers *use* web server logs, tags, tracking pixels, and other similar tracking technologies."[1] Courts have consistently held that alleging the use of

[1] The complete archived version of Defendant's Privacy Policy as it appeared on May 25, 2023 – two months before Plaintiff filed her suit – is available on the web.archive.org at https://web.archive.org/web/20230525144924/https://legal.fubo.tv/policies/en-US/?name=privacy-policy. Plaintiff requests that the Court take judicial notice of Defendant's Privacy Policy in its entirety as Plaintiff's Complaint directly references it throughout. *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018); *see also Hepp v. Ultra Green Energy Servs., LLC*, No. 13-cv-4692, 2016 WL 1073070, at *2 (N.D. Ill. Mar. 18, 2016) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that

tracking technology, including tracking pixels, which package and disclose identifying information along with which videos have been viewed is sufficient to state a claim under the VPPA. *See Lebakken v. WebMD LLC*, 640 F. Supp. 3d 1335, 1342 (N.D. Ga. 2022) (finding allegations that WebMD utilizes a Facebook Tracking Pixel to record user activity sufficient to allege that WebMD disclosed PII); *Jackson v. Fandom, Inc.*, No. 22-cv-04423, 2023 WL 4670285, at *4 (N.D. Cal. Jul. 20, 2023) (allegations that the Facebook pixel logs which videos a user requested along with a Facebook profile ID sufficient to allege defendant's disclosure of PII under the VPPA); *In re Hulu Priv. Litig.*, No. 11-cv-03764, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014) (same); *Feldman v. Star Tribune Media Company LLC*, No. 22-cv-1737, 2023 WL 2388381 at *9 (D. Minn. Mar. 7 2023) (same). Therefore, Plaintiff not only affirmatively alleges that Defendant collects the PII necessary to state a claim under the VPPA, but she also details the several ways in which Defendant discloses its Subscribers' PII via its own data sharing practices and use of tracking pixels. In short, the aforementioned allegations demonstrate that Defendant discloses which Subscribers viewed specific videos. This information alone can support a VPPA claim, however, as detailed below, Plaintiff's additional allegations materially bolster her Complaint.

Plaintiff also alleges that Defendant collects and discloses her location and device information which can be used to identify her. (Complaint at ¶ 22D.) Defendant's Privacy Policy affirms this collection and disclosure where it states that "[Defendant] *and* [its] *service providers* collect [Plaintiff's] location information, including precise or near-precise geolocation" and that it obtains Plaintiff's "location information by accessing [her] device's GPS coordinates, through Wi-

---

can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Fi detection, or through other location verification technology." (Complaint at ¶ 22D) (emphasis added).[2] Additionally, Defendant collects unique device information including IP addresses, browser characteristics, device IDs, and advertising identifiers which can be used to identify its Subscribers. (*Id.* at ¶ 22E.) Critically, Defendant also discloses that it may and *does* combine the information it collects through its Services with information collected automatically, such as location information and the videos Subscribers' watch, and disclose such information to third-parties. (*Id.* at ¶¶ 23–24.)[3] Courts have held that similar allegations regarding the collection and disclosure of such location and identifying information combined with a subscribers' viewing history is sufficient to state a claim under the VPPA. In *Yershov*, the First Circuit held that the transmission of viewing records along with GPS coordinates and a device's unique identification number constituted PII. 820 F.3d at 486 ("[g]iven how easy it is to locate GPS coordinate on a map, this disclosure would enable most people to identify what are likely the home and work addresses of the viewer"). The court went on to explain that "there is certainly a point at which the linkage of information to identity becomes too uncertain, or too dependent on too much yet-to-be done, or unforeseeable detective work" however, there, the linkage of the alleged information was readily foreseeable to the defendant. *Id.* Therefore, the alleged disclosure of the GPS address and device identifier information along with other identifying information "adequately allege[d] that [defendant] disclosed information reasonably and foreseeably likely to reveal which [of Defendant's] videos [plaintiff] obtained." *Id*. Further, in *Louth v. NFL Enterprises LLC*, the court

[2] Paragraph 22 of the Complaint quotes Section 1 of Defendant's Privacy Policy. *See* https://web.archive.org/web/20230525144924/https://legal.fubo.tv/policies/en-US/?name=privacy-policy#1-information-we-collect

[3] Paragraph 24 of the Complaint quotes Section 3 of Defendant's Privacy Policy which specifically states that Defendant "disclose[s] information about content you view on the Fubo TV Services to video measurement services such as Nielsen, as well as *other analytics providers*." *See* https://web.archive.org/web/20230525144924/https://legal.fubo.tv/policies/en-US/?name=privacy-policy#3-how-we-disclose-your-information (emphasis added).

also examined the sufficiency of allegations regarding the disclosure of consumers' geolocation in a VPPA case. There the court stated that the defendant disclosed "geolocation [data which] can be considered precise" which is "reasonably and foreseeably likely to identify a user who watched videos. . ." No. 21-cv-00405, 2022 WL 130866 at *2 (D. R. I. Sept. 12, 2022). The court in *In re Vizio, Inc., Consumer Privacy Litigation* ("*Vizio*") also examined similar allegations and determined that MAC addresses – a unique identifying number assigned to electronic devices that can access the internet – can identify a person when combined with IP addresses, zip codes, product model numbers, and other information. *Vizio*, 283 F. Supp. 3d 1204, 1225 (C.D. Cal. 2017). Thus, the court determined that the plaintiffs had plausibly alleged that "Vizio's provision of . . . 'highly specific viewing behavior data on a massive scale with great accuracy' amounts to the disclosure of [PII]." *Id.* at 1226. Accordingly, because Plaintiff alleges that Defendant collects and discloses not only information that specifically identifies her viewing history, but also information that could be used to identify her such as her precise location and GPS coordinates, Plaintiff's allegations are sufficient to state a claim under the VPPA.

Defendant attempts to tip-toe around Plaintiff's plainly stated allegations by arguing that it only "may" collect and disclose PII, and that it only "may" combine certain information. (*Id.* at 5, 11.) However, as alleged in Plaintiff's Complaint and demonstrated by the entirety of the exact language in Defendant's own Privacy Policy, Defendant actually *does* disclose information that identifies Subscribers, including names, device identifiers, precise geolocation and GPS coordinates, along with information that reveals which videos Subscribers viewed, such as usage information and information collected by Defendant's websites' tracking pixels and other tracking technologies. Together, this disclosed information identifies its Subscribers as having viewed specific video materials. Plaintiff goes on to provide additional factual allegations to further

demonstrate the plausibility of her claims. For example, Fubo invites third-party advertisers to "Follow the Audience" across its content portfolio, admitting that it uses first-party data to "create custom audience segments informed by viewership behavior to target users based on the exact content and amount of time they are watching[.] (Complaint at ¶ 26.) This allows these third-party advertises to "reach these *specific* [Subscriber]s across any content genre available on FuboTV." (*Id.*) (emphasis added). While Defendant's Motion to Dismiss picks apart every citation to its privacy policy that Plaintiff makes, it surprisingly fails to address these allegations altogether. Indeed, Plaintiff also cites Defendant's Annual SEC Report which describes at length its business practices and how it monetizes its audience and the billions of data points it collects from them. (*Id.* at 27.)[4] In fact, Defendant itself admits that its "use of [S]ubscriber data to deliver relevant advertising on [its] platform places us and our content publishers at risk for claims under a number of laws, *including but not limited to the Video Privacy Protection Act ("VPPA")*[.]" (Complaint at ¶ 27) (emphasis added). There is no question that if Defendant was not in fact engaging in the very conduct that is explicitly stated in its privacy policy and further supported by its own advertiser pitch decks that it would not flag its potential liability for violating the VPPA in its annual corporate disclosures. Here again, Defendant's Motion to Dismiss is entirely silent.

Finally, and eliminating any doubt as to whether Defendant did in fact disclose Plaintiff's PII, are Plaintiff's allegations as to her own experience on Defendant's streaming platform. That is, Plaintiff alleges that while viewing content on Defendant's platform she regularly saw advertisements that "were paid for by various companies and/or advertising agencies that paid to have their ad content appear *specifically on Plaintiff's account* and *based on the content that she was viewing*, or had viewed in the past." (Complaint at ¶ 36) (emphasis added). While Defendant

[4] Also available at https://ir.fubo.tv/financials/annual-reports/default.aspx.

attempts to dismiss these allegations away as lacking any factual foundation, they are in fact consistent and supported by the entirety of Plaintiff's Complaint regarding how Defendant's streaming service operates. Indeed, given Defendant's business model of providing third parties an advertising platform that would allow them to target *specific* individuals with relevant advertisements based on their viewing history, Plaintiff's allegations that Defendant collects and discloses its Subscribers' PII to third parties more than cross the line of plausibility.

In short, Plaintiff alleges facts based on Defendant's own disclosures, statements, and publicly available documents, that Defendant collects and discloses "information reasonably and foreseeably likely to reveal which. . . videos [a plaintiff] has obtained" *and* that can be used to specifically identify her. *Yershov*, 820 F.3d 486. While Plaintiff will ultimately have to support her allegations with facts obtained in discovery and prove that Defendant did in fact disclose its Subscribers' PII, "this is a factual inquiry ill-suited for resolution on a motion to dismiss." *Vizio*, 238 F. Supp. 3d at 1225–26 ("The Court simply cannot accept [defendant]'s offer to engage in judicial fact-finding or make sweeping determinations as a matter of law on this Motion to Dismiss. Because [p]laintiffs have plausibly alleged that the array of information [defendant] discloses about them is personally identifiable information, the [c]ourt must deny [defendant]'s Motion to Dismiss [p]laintiffs' VPPA claims"); *Yershov*, 104 F. Supp. 3d at 145 (observing that a "factual record would need to be developed before concluding that an Android ID is not PII"); *Harris*, 2023 WL 2583118, at *5 ("If discovery reveals Defendant played no role in the transmission of Plaintiff's information to Facebook, the Court will consider that at summary judgement").

### B. Defendant is a "Video Tape Service Provider."

Defendant claims that Plaintiff fails to allege that she watched "prerecorded" video cassette tapes or other similar audio-visual materials because Defendant *also* provides live streaming TV.

(MTD at 13.) Defendant's argument is meritless because Plaintiff's allegations plainly concern her viewing of Defendant's pre-recorded materials, not its live streaming.

The VPPA defines "video tape service provider" to mean "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials[.]" 18. U.S.C. § 2710 (a)(4). In her Complaint, Plaintiff states that Defendant is a "video tape service provider" as defined under the VPPA because it provided "movies and television shows to subscribers *such as Plaintiff*[.]" (Complaint at ¶ 53) (emphasis added). Critically, Plaintiff alleges that she *herself*, along with the other Class members, are "consumers" under the VPPA and viewed movies and/or television shows through its service. 18. U.S.C. § 2710 (a)(1); Complaint at ¶¶ 52, 54. Accordingly, Plaintiff has alleged that Defendant is a "video tape service provider," necessarily providing pre-recorded video material, and that she used her account to view such prerecorded video materials through her paid subscription. *See* 18 U.S.C. § 2710(a)(4); Complaint at ¶ 33. The fact that Defendant *also* provides live-streaming through its services is immaterial to Plaintiff's VPPA claim. *See Golen v. NBCUniversal Media, LLC*, No. 22-cv-9859, 2023 WL 5434378 at *4 (S.D. NY Aug. 23, 2023) ("The VPPA's text does not provide – and [defendant] has not identified any case holding – that where an entity happens to also provide live content, its on-demand content falls outside the VPPA's scope").

Defendant does not assert, or offer any evidence, that Plaintiff has only consumed live videos, and an inquiry into which videos Plaintiff did or did not view is a factual inquiry not appropriate at this stage of the litigation. Accordingly, Defendant's argument that Plaintiff failed to allege that Fubo is a "video tape service provider" should be denied.

### C. The "Ordinary-Course" Exception under the VPPA does not Apply.

Defendant argues that, even if the Complaint is sufficiently alleged, which it is, that Plaintiff's Complaint should be dismissed because the "ordinary course" exception bars her claims. (MTD at 13–14.) However, Defendant's argument ignores the allegations in Plaintiff's Complaint and misinterprets the exception's narrow application.

The VPPA exempts disclosures made "incident to the ordinary course of business of the video tape service provider." 18 U.S.C. § 2710 (b)(2)(E). Under the VPPA, the term "ordinary course of business means *only* debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710 (a)(2) (emphasis added). While Plaintiff alleges numerous circumstances under which Defendant collects and discloses its Subscribers' data, she plainly alleges, as described above, that Defendant collects and discloses her PII to third-parties for various purposes including web analytics, advertising, and data-driving revenue, in violation of the VPPA. (*See* Complaint generally.) Plaintiff does *not* allege that Defendant discloses its Subscribers' PII for debt collection activities, order fulfillment, request processing, or the transfer of ownership. Nor is "[m]arket research and web analytics . . . in the ordinary course of [Defendant]'s business of delivering video content to consumers." *In re Hulu Privacy Litigation*, No. 11-cv-03764, 2012, WL 3282960 at *7 (N.D. Cal. Aug. 10, 2012). To the extent that Defendant challenges factual allegations regarding the purpose of its data-sharing practices, that factual issue is not appropriate for resolution on a motion to dismiss. *See Jackson*, 2023 WL 4670285 at *5; *In re Hulu Privacy Litigation*, 2012 WL 3282960 at *7 (same). Thus, taking Plaintiff's facts alleged in the complaint as true, she plausibly pleads that any disclosure was not incident to the ordinary course of business.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint should be denied in its entirety.[5]

DATED: December 18, 2023

Respectfully submitted,

NE'TOSHA BURDETTE, individually and on behalf of similarly situated individuals

By: /s/ *Eugene Y. Turin*
One of Plaintiff's Attorneys

Eugene Y. Turin
Jordan R. Frysinger
McGuire Law, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

[5] Should the Court grant Defendant's Motion in whole or in part, Plaintiff requests that any such dismissal be without prejudice to provide Plaintiff the opportunity to correct any curable defects, as it is well established that a cause of action should not be dismissed with prejudice unless it is clear that no set of facts can be proved under the pleadings which would entitle a plaintiff to relief. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008).

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2023, I electronically filed the foregoing *Plaintiff's Memorandum of Law In Opposition To Defendant's Motion to Dismiss* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ *Eugene Y. Turin*