IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NE'TOSHA BURDETTE, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No.  23 C 10351 |
| v. | Judge Harry D. Leinenweber |
| FUBOTV INC., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ne'Tosha Burdette ("Burdette") brings a class action complaint against Defendant FuboTV Inc. ("Fubo") under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et seq.* Fubo moves to dismiss the Complaint under FED. R. CIV. P. 12(b)(6) for failure to state a claim. For the reasons stated herein, Fubo's Motion to Dismiss is denied.

### I. BACKGROUND

Plaintiff Burdette's Complaint alleges the following. Fubo is an online platform for streaming movies and TV shows, including both prerecorded and live content. Fubo offers a paid subscription that permits users to pay for access to its content. Fubo uses a sophisticated tracking technology that collects its subscribers' personally identifiable information ("PII"), including information which identifies a person as having viewed specific videos on Defendant's streaming service. Fubo discloses consumers' PII to third

parties for marketing, advertising, and analytics purposes, among other reasons, without the consent of the subscribers.

Burdette is a paying subscriber to Fubo, and she has accessed video and television content on the platform. She alleges that, without her consent, Fubo "knowingly and intentionally disclosed Plaintiff's PII, including specifically her viewing history, to third parties and affiliates." (Dkt. No. 1-1 ("Compl.") ¶ 34.) Burdette also alleges that Fubo disclosed "information that could be used to identify her as an individual who has requested to view a specific video(s)[.]" (*Id.* ¶ 37.)

Plaintiff brings a class action on her own behalf and on behalf of a nationwide class for legal and equitable remedies under the VPPA.

## II.  LEGAL STANDARD

"'To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level.'" *Elaihor v. Primerica Life Ins. Co.*, 2023 WL 3947617, at *2 (N.D. Ill. June 12, 2023) (quoting *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018)). "'While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Id.*, at *2. (quoting *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. <u>ANALYSIS</u>

The VPPA prohibits video tape service providers from knowingly disclosing a consumer's personal identifiable information — which "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider," § 2710(a)(3) — to any other person without first obtaining that consumer's informed, written consent. § 2710(b).

Burdette's consent is not at issue. Rather, Fubo argues the Complaint should be dismissed for three reasons: (1) Burdette's Complaint does not sufficiently allege plausible facts that Fubo unlawfully disclosed her PII to third parties; (2) Burdette failed to allege that Fubo is a "video tape service provider" as required under the VPPA; and (3) the "ordinary-course" exception to the VPPA applies and bars Plaintiff's claim.

The Court will address each in turn.

#### A. <u>Disclosure of PII</u>

To prevail on a VPPA claim, a plaintiff must be able to show that the defendant disclosed the specific combination of (a) "the consumer's identity"; (b) "the video material's identity"; and (c) "the connection between them." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). Burdette alleges that Fubo compiles data obtained from its subscribers, including PII that can be used to identify a person, as well as their viewing history, and shares it with third-party advertisers. As for Plaintiff-specific pleadings, Burdette alleges Fubo collected and disclosed to third parties without her consent both her own identifying information as well as her viewing history. (Compl. ¶ 39.)

The Complaint cites to Fubo's privacy policy, which reviews how Fubo collects users' information, what kinds of information Fubo may collect, and how Fubo may share and disclose the information. The policy cited is effective August 30, 2023. Since the parties do not contest the validity or relevance of the document, the Court considers it in issuing this ruling. (Viewable at https://legal.fubo.tv/policies/en-US/?name=privacy-policy, last viewed on May 20, 2024). The policy notes that the information Fubo or its vendors collect includes identifying information such as demographic or profile information, name, email address, and near-precise geolocation information, and that Fubo "may share" information such as "certain browsing history or app usage" and "identification and demographics" as well as "device information for purposes to "advertising networks and advertisers and other third parties." (*Id.*) The Complaint also cites the 2020, 2021, and 2022 Fubo Annual Reports in which Fubo disclosed that use of subscriber data to deliver relevant advertising on its platform "place[d] [Fubo] and [their] content publishers at risk for claims under a number of laws, including but not limited to the Video Privacy Protection Act ('VPPA')." (Compl. ¶ 27.) Also quoted in the Complaint is a May 2022 press release in which Fubo disclosed it uses "first-party data" to "create custom audience segments informed by viewership behavior to target users based on the exact content and amount of time they are watching, anywhere on the platform." (Viewable at https://ir.fubo.tv/news/news-details/2022/fuboTV-Invites-Brands-to-Follow-The-Audience-at-2022-IAB NewFronts/default.aspx, last viewed on May 20, 2024).

Fubo unsuccessfully argues the Complaint fails to allege adequately that Fubo (1) disclosed information to a third party that would allow an ordinary person to identify Burdette (2) in connection with Burdette's viewing history. (Dkt. No. 18 ("Reply") at 1-2.) *Campos v. Tubi* is instructive. 2024 WL 496234 (N.D. Ill. Feb. 8, 2024) (Tharp, J.) There, plaintiff brought VPPA claims against an online streaming platform, Tubi, alleging that Tubi discloses PII to third-party advertisers to generate advertising revenue. Judge Tharp denied Tubi's Motion to Dismiss, finding that the plaintiff sufficiently alleged Tubi's disclosure of PII. The Court relied on several factual allegations and documents "to infer that Tubi collects users' data, including individual level viewing history and other PII, for the purposes of targeting them with ads." *Id*. at *8. This combination of factual allegations and documentary evidence included Tubi's privacy policy, which, much like Fubo's, used conjectural language that Tubi "may collect" relevant information and "may" share that information to third-party advertisers. *Id*. The court in *Campos* also relied on allegations that Tubi used a "sophisticated tracking technology" to collect PII; a Mozilla foundation review that "confirm[ed] that Tubi matches third-party data to 'existing customers' to allow advertisers to target specific individuals"; Tubi's 2023 "Audience Insight" report which "suggest[ed] that Tubi collects and discloses its subscribers' viewing data at multiple points"; and a Tubi press release that implied Tubi partnered with a credit reporting agency to accumulate even more personal data from its users. *Id.* at *8.

Fubo distinguishes *Campos* on the grounds that unlike Fubo's policy, Tubi's privacy policy in *Campos* went "beyond the conjectural 'may' language to affirm that Tubi discloses the relevant categories of information to others in connection with advertising

and marketing purposes." (Dkt. No. 20, Opposition to Notice of Supplemental Authority at 2) (citing *Campos*, 2024 WL 496234, at *8). This is true. Tubi's policy did contain a section on the California Consumer Privacy Act notice in which it disclosed that it *had affirmatively shared* certain relevant categories of information, including PII and device history, to third party advertisers. It is also true that Fubo's privacy policy does not contain such a detailed and affirmative statement regarding which kinds of information it did share with third parties as opposed to *may have* shared. But there are a few reasons why this difference does not foreclose Burdette's claims.

First, Judge Tharp did not find Tubi's privacy policy in *Campos* – including the section in which it shared exactly which PII it disclosed to advertisers – to be a smoking gun. Rather, it was just one additional piece of circumstantial evidence that gave rise to the plausible inference that Tubi shared information with third parties in a "non-VPPA-compliant manner – meaning in a manner that would permit the third party to learn an individual's identity *and* their viewing history." *Campos,* at *9 (emphasis added). This is because nowhere did Tubi's Privacy Policy "explicitly say that it shares the relevant VPPA-PII *combination* with third parties." *Id.* at *10 (emphasis in original).

Second, while Fubo's privacy policy does not offer the same degree of specificity offered in Tubi's privacy policy, it does go beyond the conjectural "may" language to affirm that Fubo does in fact disclose subscriber information to third parties. It states: "[w]e and our vendors on our behalf disclose information we collect from and about you for the following business and operational purposes listed below." It also states that "[w]e disclose information that does not personally identify you (e.g., IP address or a device

identifier) with information about content you view on the Fubo TV Services to video measurement services such as Nielsen, as well as other analytics providers."

The Court disagrees with Fubo that this case is more akin to *Nashel v. New York Times Co.* than to *Campos v. Tubi*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022). In *Nashel,* the plaintiff alleged Michigan Preservation of Privacy Act ("PPPA") violations by the defendant in 2016 based, in part, on the defendant's privacy policy from 2015, which included conjectural "may" language about disclosing personal information. The court found the conjectural language did not show that "any information was plausibly disclosed," and concluded the allegations were insufficient to state a claim. *Id*. at *5. The plaintiff also relied on the existence of two NextMark data cards that predated the relevant time period by 8 and 9 years, as well as a 2020 research study that implicated the defendant in a marketing strategy that included the disclosure of email lists. *See id.* at *1.

Unlike the plaintiff in *Nashel*, Burdette relies on factual allegations that surpass conjectural language, outdated data cards, and a case study loosely implicating defendant. The Privacy Policy permits Fubo to collect and disclose users' viewing history and specific individual-identifying information, such as names, demographic information, and location information. Fubo discloses in a press release that advertisers can "reach specific fans across any content genre available on fuboTV" based on "exact content and amount of time they are watching" as well as viewership behavior. While Fubo is right that this does not state that Fubo is disclosing non-VPPA-compliant PII with certainty, it adds to the bundle of circumstantial evidence. So too do Fubo's Annual Reports which

- 7 -

disclose that "use of subscriber data to deliver relevant advertising" could place Fubo "at risk for claims under . . . VPPA."

If Defendant wishes to rely on a Michigan privacy act case, *Gottsleben v. Informa Media, Inc.* is a more apt one than *Nashel*. 2023 WL 4397226 (W.D. Mich. Jul. 7, 2023). There, the plaintiff successfully stated a claim for improper disclosure of customer subscription information in part because the *Gottsleben* defendant's privacy policy "indicated that it was disclosing customer information to third parties," unlike in *Nashel*. *Id.* at *5. The court also relied on defendant's "news releases touting its development and marketing of a database of customer information." *Id*. Burdette's Complaint more closely mirrors the sufficiently pled claim in *Gottsleben* than that in *Nashel* because there is even broader indication that Fubo may have disclosed its customer information to third parties (*see supra*).

Fubo also requests this Court adopt the Third Circuit "ordinary person" standard set out in *In re Nickelodeon Consumer Privacy Litig.* in which "personally identifiable information" refers to only that information that would "readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016). Fubo cites no case in this district that imposes this standard. And while the "ordinary person" standard may "reflect [] the majority view," as Fubo argues, the Court is unconvinced that imposing the standard here would foreclose Burdette's claim. (Reply at 2.) Fubo's Privacy Policy states that Fubo affirmatively collects the following categories of information: "Identifiers (such as name, address, email address) . . . demographic information (age); location information . . ."

- 8 -

Information such as name, address, and demographic information would presumably permit an ordinary person to identify a subscriber. If this identifying information was then disclosed with that individual's viewing history, as Plaintiff alleges, such a disclosure would satisfy the ordinary person standard. In fact, even *In re Nickelodeon* held that GPS coordinates alone "contain more power to identify a specific person." 827 F.3d at 289.

Here, the Annual Reports, the privacy policy, and the press report offer sufficient circumstantial evidence to infer that Fubo disclosed customer information in a non-VPPA-compliant manner. *Cf. In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628-29 (7th Cir. 2010) ("We need not decide whether the circumstantial evidence that we have summarized is sufficient to compel an inference of conspiracy; the case is just at the complaint stage and the test for whether to dismiss a case at that stage turns on the complaint's 'plausibility.'" (emphasis in original)). Taking those factual allegations as true and drawing reasonable inferences based on those allegations and the documentary evidence in Fubo's favor, the Court finds Burdette's claim sufficiently alleges that Fubo disclosed her PII.

### B. **Video Tape Service Provider**

Fubo asserts also that Burdette fails to state a VPPA claim because she did not allege that Fubo is a "video tape servicer provider," as required under the VPPA. Fubo's logic goes: the VPPA applies only to 'prerecorded' video content and does not apply to 'live' video content. Fubo provides subscribers with both prerecorded and live video content. The Complaint did not specify the movies and television Burdette watched were prerecorded as opposed to live. Thus, Plaintiff fails to state a VPPA claim.

Fubo's logic impermissibly elevates the legal standard Burdette must overcome at the Motion to Dismiss stage. The VPPA defines "video tape service provider" to mean "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials[.]" § 2710 (a)(4). In her Complaint, Burdette states that Fubo is a "video tape service provider" as defined under the VPPA because it provided "movies and television shows to subscribers such as Plaintiff[.]" (Compl. ¶ 53). Critically, Burdette alleges that she herself, along with the other Class members, are "consumers" under the VPPA and viewed movies and/or television shows through its service. § 2710 (a)(1); (Compl. ¶¶ 52, 54.)

Admittedly, Burdette never spelled out that she watched prerecorded, as opposed to live materials. This requires an inference be drawn as to which kind of content she consumed as the basis for her Complaint. Fubo would have the Court draw this inference in favor of Defendant. But fortunately for Burdette, inferences at the Motion to Dismiss stage are to be drawn in the favor of Plaintiff. *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022). Given the surge in consumer preference for prerecorded content over live content in the recent decade, this is an entirely plausible scenario. Fubo's motion fails on this ground.

### C. "Ordinary-Course" Exception

Finally, Fubo asserts that even if the Complaint sufficiently alleged that Fubo disclosed Plaintiff's PII to third parties and is a video tape service provider, the VPPA's "ordinary course" exception would bar her claim. The VPPA carves an exception for

disclosures that are "incident to the ordinary course of business of the video tape service provider," including "order fulfillment" and "request processing." § 2710(a)(2), (b)(2)(E).

In support of its argument that "VPPA's legislative history strongly suggests that marketing to customers was one purpose Congress intended to encompass in the exceptions," Fubo cites to the same 1988 Senate Judiciary Report the Seventh Circuit rejected in *Sterk v. RedBox Automated Retail, LLC*, 770 F.3d 618, 623-35 (7th Cir. 2014). *See* S. Rep. No. 100-599, at 12-14 (1988), as reprinted in 1988 U.S.C.C.A.N. 4342-1, 4342-11, 12. The cited Senate Report reads:

> This subsection takes into account that video tape service providers may use third parties in their business operations. For example, debt collection is often conducted by third parties, with disclosure of credit histories made to third party credit bureaus. Debt collection is subject to other Federal laws: disclosures for that purpose continue to be governed by those laws.
>
> This subsection also allows disclosure to permit video tape service providers to use mailing houses, warehouses, computer services, and similar companies for marketing to their customers. These practices are called "order fulfillment" and "request processing."

The Seventh Circuit in *Sterk* found this argument not only "self-serving," but also saw little persuasive value in the "ambiguous committee report." *Sterk*, 770 F.3d at 624. As targeted marketing and advertising analytics have only ballooned in complexity and pervasiveness in the decade since *Sterk*, the reasoning in *Sterk* is that much more on point today: "order fulfillment" and "request processing" cannot reasonably be synonymous with marketing activities. Burdette cites in a supplemental authority *Saunders v. Hearst Television, Inc.*, which holds that "advertising" does not fall within the VPPA's "ordinary course of business" exception. 2024 WL 126186 (D. Mass. Jan. 11,

- 11 -

2024). Fubo dismisses *Saunders* as "incorrect and non-binding." (Dkt. No. 22, Opposition to Supplemental Authority at 2.) Without authority holding otherwise, the Court need only follow suit with the Seventh Circuit in *Sterk* to find that advertising does not fall within VPPA's "ordinary course of business" exception.

## IV. CONCLUSION

For the reasons stated herein, the Court DENIES Defendant's Motion to Dismiss.

**IT IS SO ORDERED.**

                                      Harry D. Leinenweber, Judge
                                      United States District Court

Dated: 6/4/2024